**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                                            Case No. 05-CR-80206

v.

                                            HONORABLE DENISE PAGE HOOD

**MATT MIHSEN,**

        **Defendant.**

_____/

**MEMORANDUM OPINION & ORDER GRANTING DEFENDANT'S MOTION TO
STRIKE PREJUDICIAL SURPLUSAGE AND NOTICE OF EVIDENTIARY HEARING**

**I.      INTRODUCTION**

On February 15, 2005, Defendant Matt Mihsen was arrested at the Detroit Metropolitan Airport on his way to Syria via Amsterdam. Defendant is charged in a three-count indictment with the following: (1) violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*; (2) smuggling or attempting to smuggle bulk cash from the United States to Syria, in violation of 31 U.S.C. § 5332; and (3) making false statements to federal agents in violation of 18 U.S.C. § 1001.

Defendant has filed three motions in this matter. The first is a Motion to Dismiss Count One of the Indictment, filed June 17, 2005. Defendant's second motion is to Strike Prejudicial Surplusage, also filed June 17, 2005. Finally, on July 1, 2005, Defendant filed a Motion to Suppress Evidence and Statements. The Government submitted responses to all three Motions, to which Defendant has replied. For the reasons set forth below, the Court grants Defendant's Motion to Strike Prejudicial Surplusage, and sets Defendant's Motion to Suppress Evidence and Statements for an evidentiary hearing. Defendant's Motion to Dismiss Count One of the Indictment will be

addressed in a separate opinion.

## II.     STATEMENT OF FACTS

On February 15, 2005, Defendant boarded a flight from Dallas, Texas, to Detroit, Michigan. From Detroit, Defendant planned on traveling to Syria via Amsterdam, The Netherlands. Defendant was born in Syria and is a naturalized citizen of the United States residing in Texas. While Defendant was on his way to Detroit from Dallas, the Transportation Safety Authority ("TSA") found two radiation detectors and a bullet-proof vest in Defendant's checked luggage. Defendant's luggage was checked through to his final destination, meaning Defendant was not scheduled to reclaim his luggage before arriving in Syria. The TSA notified Immigration and Customs Enforcement ("ICE") agents in Texas regarding the items found. The ICE agents then contacted Special Agent Cory Howe of the Department of Homeland Security ("DHS"), the agent now in charge of this case. Agent Howe alerted officers of Customs and Border Protection ("CBP") in Detroit. The Government contends that a plan was put into place to inspect Defendant at his international gate, once he committed to boarding the Detroit–Amsterdam flight. (Gov't's Resp. to Mot. to Supp. Statements and Evidence at 2.)

Immediately upon deplaning the Dallas–Detroit flight, agents from the Detroit Metropolitan Airport Group ("DMAG"), of the Drug Enforcement Agency ("DEA"), interviewed Defendant. Defendant alleges the DMAG agents also conducted a search of his baggage without a warrant. Agent Howe, whom the Government alleges was coincidentally in the same vicinity, noticed the DMAG agents and learned that the TSA had also provided DMAG with information regarding Defendant prior to his arrival in Detroit. The DMAG agents informed Agent Howe that they were satisfied Defendant did not have any illicit drugs or over $10,000 in cash on his person. The agents

also informed Agent Howe that Defendant claimed to be an Federal Bureau of Investigations ("FBI") informant, and Defendant was traveling to Syria on behalf of the FBI in an effort to make contact with terrorists and aid in the search for Osama bin Laden.  Defendant communicated to Agent Howe that he planned to provide any information he gathered in Syria to the FBI.  The Government contends Agent Howe did not interview Defendant at ths time.  The DMAG agents allowed Defendant to proceed without further inquiry.  Defendant alleges that he was escorted to the gate for his Detroit–Amsterdam flight by the DMAG agents. (Def.'s Mot. to Supp. Statements and Evidence at 2.)  The Government asserts Defendant was released by the DMAG agents and proceeded to his gate unescorted. (Gov't's Resp. to Mot. to Supp. at 3.)  The Government further contends that DMAG's stop of Defendant was fully independent of the plan already put in place by Agent Howe and the CBP.  Defendant asserts the Government agencies acted in concert and the DMAG interview was conducted accordingly.

Based on Defendant's statement that he was an FBI informant, Agent Howe contacted Special Agent Ed Ray of the FBI in an effort to determine the veracity of the statement.  Agent Ray informed Agent Howe that Defendant was not employed by the FBI and was not traveling at the request of the Bureau.  While awaiting his next flight, Defendant was paged over the loudspeakers by the CBP.  Defendant responded to the page, and upon verifying his identity, CBP officers detained Defendant and had his checked luggage removed from the plane for inspection.

While speaking to the CBP officers, Defendant revealed that he: (1) had worked in the Dallas/Fort Worth Airport as a terminal supervisor for an independent security company; (2) is a private aircraft pilot; (3) is a private investigator; and (4) is an import and export specialist. (Gov't's Resp. to Mot. to Supp. at 3.)  In response to questioning, Defendant stated he desired to work as an

3

Air Marshal. (Id.) The CBP officers specifically questioned Defendant about how much cash he was carrying. Defendant indicated he had less than $10,000 in cash on his person. The inspection conducted by the CBP officers disclosed Defendant in fact had $13,256 in cash. A search of Defendant's luggage showed Defendant had packed "three radiation detectors, a bullet-proof vest, 40 rounds of 9 mm ammunition, a hand-held Taser device, a rifle scope, and other items of concern." (Id.) As a result of their findings, the CBP officers contacted Agent Howe.

Agents Howe verified the CBP findings and in turn contacted the United States Attorney's Office. The United States Attorney's Office informed Agent Howe that there was probable cause to believe Defendant violated federal criminal laws. At this point, Agents Howe and Ray formally arrested Defendant and read him his *Miranda* warnings. Defendant signed a waiver of his rights, also agreeing to be interviewed and to give a statement. (Id. at 4.) Based on his statements and the items on his person and found in his checked baggage, Defendant was charged with violating IEEPA, smuggling or attempting to smuggle bulk cash from the United States to Syria, making false statements to federal agents.

### III.    APPLICABLE LAW & ANALYSIS

Defendant's Motions seek an order striking certain language found in the Indictment and suppressing Defendant's statements and the evidence seized by law enforcement officials during their search of Defendant's luggage. Each Motion is analyzed separately below, applying the facts as set forth in the preceding section.

#### A.    Motion to Strike Prejudicial Surplusage

Defendant takes issue with the inclusion of several facts in the Indictment which, while they are uncontested by Defendant, may prejudice jurors. Indictments are governed by Rule 7 of the

Federal Rules of Criminal Procedure. Rule 7(c)(1) provides, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Rule 7(d) allows courts, upon motion, to strike surplusage from the indictment or information. Striking surplusage pursuant to Rule 7(d) is proper when the "indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974), *cert. denied*, 419 U.S. 1124 (1975). Striking unnecessary language from the indictment is "permissive but not mandatory" and "addresses itself to the sound discretion of the district court." *Id.* (citing *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)). In order to grant a motion to strike surplusage, the words stricken must not be "essential to the charge." *Id.* On the whole, "the standard under Rule 7(d) has been strictly construed against striking surplusage . . . ." *Id.*

In particular, Defendant points to the first paragraph of the Indictment, which states that Defendant "was born in Syria, and he became a naturalized United States citizen in 1991. [Defendant] lives in the Dallas/Fort Worth area in Texas. [Defendant] is a licensed private investigator, a licensed pilot, and he has a license to drive commercial vehicles." Defendant maintains these facts are immaterial to the pending charges against him.

In addition to the personal information listed in paragraph one of the Indictment, Defendant asks the Court to strike paragraph four of the Indictment. Paragraph four purports to define the term "export" as "sending, carrying or taking an article out of the United States in any manner." Defendant argues that the Indictment "is not the appropriate vehicle for defining the terms contained within criminal charges." (Def.'s Mot. to Strike at 6.) Defendant also disputes the definition supplied by the Government, stating the definition submitted by the Government is "extraordinarily

broad" and improper. (Id.)

With respect to the descriptive facts listed in the first paragraph of the Indictment, the Court finds them unnecessary to providing a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Government argues that these facts make Defendant more likely to have knowingly violated the federal criminal statutes at issue. The Court notes that the Government may have the opportunity to present these facts at trial. However, the Indictment is an inappropriate place to list such information.

Concerning the fourth paragraph of the Indictment and the definition of "export", the Court holds that it should be stricken. The definition of export is disputed by the Parties in this case. Any jury instructions will likely include a definition of the term. Inserting the definition advocated by the Government into the Indictment allows the Government to present its view to the jury if the Indictment is read to the jury during trial. An alternative definition of export may be included in the jury instructions. Conflicting definitions contained in the Indictment and jury instructions may lead to juror confusion. The Court finds this potential source of confusion is easily avoided by striking the definition included by the Government in paragraph four of the Indictment.

### B. Motion to Suppress Statements and Evidence

Defendant seeks the suppression of all evidence and statements obtained as a result of the allegedly improper search and seizure. Defendant argues none of the law enforcement officers involved had reasonable suspicion to initially seize Defendant, nor did they have probable cause for Defendant's subsequent arrest. The Government responds that Defendant was in a border area, and that the reasonable suspicion and probable cause safeguards were inapplicable to Defendant at the time of his stop and arrest.

The Parties strongly dispute the facts underlying Defendant's arrival at the Detroit Metropolitan Airport, the DMAG questioning, and the subsequent CBP actions. The Court finds it necessary to conduct an evidentiary hearing in this matter in order to rule on Defendant's Motion to Suppress Evidence and Statements.

## IV.     CONCLUSION

Based on the foregoing, the Court grants Defendant's Motion to Strike Prejudicial Surplusage, and sets for evidentiary hearing Defendant's Motion to Suppress Evidence and Statements.

Accordingly,

IT IS FURTHER ORDERED that Defendant's Motion to Strike Prejudicial Surplusage **[Docket No. 26, filed June 17, 2005]** is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress Evidence and Statements **[Docket No. 27, filed July 1, 2005]** is set for an evidentiary hearing on **Monday, August 15, 2005, at 9:30 a.m.**

      /s/ Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED:  August 15, 2005